UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLEN EARL VIVIAN<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:16-cv-0227-KJN<br><br><br><br>ORDER |

Plaintiff Glen Earl Vivian seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from January 1, 2009, plaintiff's alleged disability onset date, through December 31, 2011, plaintiff's date last insured. (ECF No. 15.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 19.) Thereafter, plaintiff filed a reply brief. (ECF No. 20.)

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 8, 10, 11.)

1

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

I. BACKGROUND

Plaintiff was born on February 22, 1962; attended 12 years of education, but did not graduate high school or obtain a GED; can communicate in English; and previously worked as a maintenance worker and a painter. (Administrative Transcript ("AT") 23, 43-44, 71.)[2] On February 28, 2011, plaintiff applied for DIB, alleging that his disability began on January 1, 2009, and that he was disabled due to problems with: both knees; a crushed right thumb; arthritis; his back and neck; his wrist; stress; his hip; his elbows; and his feet. (AT 14, 187, 221.) After plaintiff's application was denied initially and on reconsideration, an administrative law judge ("ALJ") conducted three hearings on February 27, 2013; August 28, 2013; and March 12, 2014. (AT 40-66, 67-78, 79-86.)[3] The ALJ subsequently issued a decision dated March 31, 2014, determining that plaintiff had not been under a disability, as defined in the Act, from January 1, 2009, plaintiff's alleged disability onset date, through December 31, 2011, plaintiff's date last insured. (AT 14-26.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 11, 2015. (AT 5-7.) After receiving an extension of time from the Appeals Council to seek federal court review (AT 1-2), plaintiff then filed this action on February 4, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] The initial February 27, 2013 hearing was continued to afford plaintiff an opportunity to obtain counsel. At the August 28, 2013 hearing, plaintiff was absent due to being hospitalized out of state, and the ALJ only obtained testimony from a vocational expert in the presence of plaintiff's counsel. Thereafter, at the March 12, 2014 hearing, plaintiff, represented by counsel, personally appeared and testified.

2

II.     ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly rejected the opinion of plaintiff's treating physician, Dr. Uppal; (2) whether the ALJ erred in not finding plaintiff's right wrist pain and thoracic spine impairment to be severe impairments at step two; (3) whether the ALJ failed to make a proper step three determination; (4) whether the ALJ improperly discounted plaintiff's credibility; and (5) whether the ALJ's RFC was without substantial evidence support.[4]

III.    LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.     DISCUSSION

Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[5] As an initial matter, the ALJ determined that plaintiff met the

---

[4] Plaintiff's opening brief raises the issues in a somewhat different order.

[5] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel

insured status requirements of the Act for purposes of DIB through December 31, 2011. (AT 16.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity from January 1, 2009, his alleged disability onset date, through December 31, 2011, his date last insured. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments through the date last insured: degenerative disc disease of the lumbar and cervical spine. (Id.) However, at step three, the ALJ determined that, through the date last insured, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 17.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC"), finding that, through the date last insured, plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) except with brief changes in position. (AT 18.) At step four, the ALJ determined that plaintiff was unable to perform any past relevant work through the date last

---

five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

insured. (AT 23.) However, at step five the ALJ found that, in light of plaintiff's age, education, work experience, and RFC, and based on the VE's testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed through the date last insured. (AT 24.)

Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from January 1, 2009, plaintiff's alleged disability onset date, through December 31, 2011, plaintiff's date last insured. (AT 25.)

Plaintiff's Substantive Challenges to the Commissioner's Determinations

*Whether the ALJ improperly rejected the opinion of plaintiff's treating physician, Dr. Uppal*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the

contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[6] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

On January 6, 2012, just after plaintiff's date last insured, plaintiff's treating physician, Dr. Surinder Uppal, issued a one-page letter noting that plaintiff had degenerative disc disease of the spine (cervical, thoracic, and lumbosacral) and right thumb, with bilateral knee problems, and had become "totally disabled." (AT 490.) Dr. Uppal stated:

> He is not able to do any lifting, pushing, pulling, can not [sic] lift more than 20 pounds of weight, can not [sic] do much kneeling, crouching, over reaching [sic] etc. Can not [sic] do walking at anymore [sic] than half a block at a time, can not [sic] do any running, so he has become totally disabled but otherwise, he is mentally completely clear and he can take care of himself for his personal needs. Directions are good, speech is good, hearing is good.

(Id.)

Because Dr. Uppal's opinion was contradicted by other medical opinions in the record, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Uppal's opinion.

As an initial matter, the ALJ reasonably gave Dr. Uppal's January 6, 2012 opinion little weight, because it is conclusory, provides little support for the extreme limitations assessed, and appears to rely significantly on plaintiff's subjective complaints, which the ALJ properly found less than credible for the reasons discussed below. (AT 23.) Indeed, even plaintiff himself admitted that he could walk more than half a block (according to plaintiff, about 5-6 blocks not using any assistive device) during the relevant period. (AT 427.)

////

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

The ALJ also substantially relied on the opinion of consultative examiner, Dr. Omar Colon, who personally examined plaintiff during the relevant period on June 4, 2011. (AT 19, 23, 427-30.) Dr. Colon noted plaintiff's complaints related to his elbows, wrists, thumbs, lower back, left hip, knees, and ankles, but also observed that plaintiff walked independently into the examination room with a normal gait, looking comfortable and not in pain. (AT 427-28.) Upon examination, a straight leg raising test was negative bilaterally; plaintiff had normal motor strength/muscle bulk in all extremities; and a sensory examination and reflexes were normal in all extremities. (AT 429.) Dr. Colon found mild swelling in plaintiff's left ankle, with no tenderness on palpation, and found no spasms or tenderness on palpation of plaintiff's lumbar and cervical spine. (Id.) Dr. Colon diagnosed plaintiff with chronic pain syndrome and left hip pain, but opined that plaintiff had no physical functional limitations that could be expected to last for at least twelve (12) months. (AT 429-30.) Because Dr. Colon personally examined plaintiff and made independent clinical findings, his opinion constitutes substantial evidence on which the ALJ was entitled to rely.

Furthermore, the ALJ properly relied on the opinion of non-examining state agency physician Dr. Nguyen, who reviewed plaintiff's records during the relevant period on July 18, 2011, and opined that plaintiff did not have a severe physical impairment. (AT 22-23, 433.) See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").

Finally, the ALJ rationally observed that Dr. Uppal's very restrictive limitations were also unsupported by other evidence in the medical record. (AT 23.) For example, as the ALJ pointed out, plaintiff reported to one of his treating providers that "he was doing a lot of work on 05/28/2012, he was working on baseboards and climbing up and down ladders…." (AT 21, 958.) Such activities are plainly inconsistent with Dr. Uppal's severe opinion.

Therefore, the court finds that the ALJ provided several specific and legitimate reasons for discounting Dr. Uppal's opinion.

*Whether the ALJ erred in not finding plaintiff's right wrist pain and thoracic spine impairment to be severe impairments at step two*

Plaintiff correctly notes that the ALJ did not specifically find plaintiff's right wrist pain and thoracic spine impairment severe for purposes of step two.

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). As the Ninth Circuit Court of Appeals has explained, "the step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations and quotation marks omitted).

Even assuming, without deciding, that the ALJ technically erred by not finding plaintiff's right wrist pain and thoracic spine impairment severe for purposes of step two, such error was harmless. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless"). As an initial matter, the ALJ here proceeded to subsequent steps and considered all of the medical evidence in formulating the RFC. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). Moreover, the ALJ determined, based on the VE's testimony, that even if plaintiff were limited to sedentary work with the ability to change positions and perform only occasional manipulation of both hands, there would still have been jobs that existed in significant numbers in the national economy that plaintiff could have performed. (AT 25, 72-73.)

Thus, any error at step two does not warrant reversal and remand.

*Whether the ALJ failed to make a proper step three determination*

The claimant "bears the burden of proving that ... she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment

that manifests only some of those criteria, no matter how severely, does not qualify....For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990). A determination of medical equivalence must rest on objective medical evidence. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of equivalence must be based on medical evidence only."); Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) ("Medical equivalence must be based on medical findings…A generalized assertion of functional problems is not enough to establish disability at step three."). Furthermore, "[t]he mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of disability." Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985). Instead, all of the specified medical criteria must be met or equaled. Id. at 1550.

On appeal, plaintiff does not outline a plausible theory, by reference to specific criteria and medical findings, of how he meets or equals any particular Listing. Instead, plaintiff essentially posits that the ALJ should have further developed the record in that regard through medical expert testimony. That argument amounts to little more than an attempt by plaintiff to improperly shift his burden of proof to the Commissioner. Although it is true that the ALJ has a general duty to appropriately develop the record, there is no indication that the ALJ was required to further develop the record to make a proper step three determination here. For the reasons discussed above, the ALJ properly rejected Dr. Uppal's opinion, and the consultative examiner and state agency physician did not make any findings of insufficient evidence, but instead issued definitive opinions finding plaintiff not disabled.

Therefore, the court finds no error at step three.

*Whether the ALJ improperly discounted plaintiff's credibility*

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has

9

>presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
>Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations. Indeed, although both the consultative examiner and state agency physician assessed no functional limitations, the ALJ considered plaintiff's testimony, the diagnostic imaging studies, and the record as a whole, and ultimately limited plaintiff to light work with the need to make brief changes in position. (AT 18-19, 23.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding his symptoms and functional limitations, the ALJ

provided several specific, clear, and convincing reasons for doing so.

The ALJ reasonably found that plaintiff's subjective allegations were inconsistent with the medical opinion evidence, when properly weighed. (AT 22.) Although lack of medical evidence to fully corroborate the alleged severity of symptoms cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

Additionally, the ALJ properly found plaintiff less than credible in light of untruthful testimony concerning his substance abuse. (AT 22.) At the March 12, 2014 administrative hearing, plaintiff testified that he had been in AA before, drank alcohol one time about six months prior, and before that last drank alcohol regularly 14 years ago. (AT 54.) However, on January 15, 2010, plaintiff presented to the emergency room with acute onset of mid-abdominal discomfort and vomiting. (AT 283.) Treating providers noted that plaintiff was a "heavy alcohol abuser, drinks approximately a pint a day for a year" and had an ETOH level of 410. (Id.) Plaintiff was diagnosed with acute alcoholic pancreatitis. (AT 284.) Also, on March 5, 2012, plaintiff informed his treating provider that he had recently consumed a six-pack of beer. (AT 775.)

Furthermore, the ALJ justifiably found some of plaintiff's activities to be inconsistent with disabling impairments. For example, as discussed above, in May 2012, plaintiff reported working on baseboards and climbing up and down ladders. (AT 21-22, 958.)

Therefore, the court finds that the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's credibility. As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ...Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

////

*Whether the ALJ's RFC was without substantial evidence support*

For the reasons discussed above, the court finds that the ALJ appropriately evaluated the medical opinion evidence and plaintiff's credibility. As such, plaintiff's argument that the RFC is without substantial evidence support is not well taken.

Throughout his briefing, plaintiff also raises several other arguments, which are ultimately unpersuasive.

Plaintiff argues that the ALJ did not adequately account for the side effects of plaintiff's medications, such as his alleged inability to think/focus and his lack of energy. However, as the ALJ discussed, the record in this case contains evidence of significant drug seeking behavior, with even Dr. Uppal expressing concern regarding the rate at which plaintiff was requesting opioid medication refills. (AT 21-23.) Additionally, on January 7, 2013, in a worker's compensation utilization review to determine medical necessity and appropriateness, Dr. Jay Westphal opined that plaintiff's ongoing opioid use was not supported by the chronic pain guidelines. (AT 23, 920.) Notably, plaintiff's treating physician Dr. Uppal otherwise opined that plaintiff was mentally completely clear and could follow directions. (AT 490.) As such, the ALJ reasonably found that plaintiff's use of medication was excessive and appropriately declined to assess additional related limitations.

Plaintiff further contends that the ALJ improperly found that plaintiff had a high school education, when he in fact did not graduate from high school or obtain a GED. However, any error in that regard was harmless, because the vocational expert identified several light and sedentary representative occupations with a specific vocational preparation ("SVP") level of 2 (involving simple work) that plaintiff could have performed.

Finally, plaintiff's argument that his due process rights were violated when vocational expert testimony was taken at the August 28, 2013 hearing in his absence is devoid of merit. The vocational expert's testimony was taken in the presence of plaintiff's counsel. The ALJ then conducted a subsequent hearing at which plaintiff himself was given an opportunity to testify, again represented by the same counsel. Nothing on this record indicates that supplemental vocational expert testimony was required after the ALJ heard plaintiff's testimony, let alone that

12

any due process violation occurred.

Plaintiff's remaining contentions are so insubstantial as to not warrant any further discussion or analysis.

V. CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is GRANTED.

3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: April 17, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE